IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                Plaintiff,

          v.

JORGE BARRAGAN, JR.,

                Defendant.

OPINION AND ORDER

09-cv-638-bbc
05-cr-39-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

On October 19, 2009, defendant Jorge Barragan, Jr. filed a letter that I construed liberally as a motion to vacate his sentence under 28 U.S.C. § 2255, despite the fact that it was not in proper form and had not been signed under oath.  In ordering the government to reply to defendant's motion, I identified two contentions defendant had raised in his motion:  (1) he is entitled to resentencing under Kimbrough v. United States, 552 U.S. 85 (2007); and (2) his attorney was ineffective for not challenging the calculation of the drug amounts attributable to defendant and for not doing an adequate investigation of the case.  After reviewing defendant's original motion, the government's response to the motion, defendant's amendment to the motion and his reply brief, I conclude that defendant has

1

failed to show any reason why his sentence should be vacated.

BACKGROUND

Defendant was one of 11 persons charged with conspiracy to possess with the intent to distribute cocaine and cocaine base with the intent to distribute it. Four of the 11, including defendant, went to trial and were found guilty of the conspiracy charge. Defendant was sentenced to 312 months in prison. He appealed, challenging the determination of his relevant drug conduct and the increase in his sentencing guidelines for possession of a firearm, but was unsuccessful. United States v. Acosta, 534 F.3d 574 (7th Cir. 2008).

The case against defendant and his codefendants arose out of drug distribution activities on the Lac Courte Oreilles reservation in northern Wisconsin, engineered by tribal members living on the reservation and members of the Latin King Nation living in Milwaukee. The conspiracy had its genesis in an early 1997 meeting between defendant and Spring Lasieur, a tribal member. At the time, defendant was a Latin King member. He introduced Lasieur to another member, Florentino Castillo, and to Ernesto Estrada. The three men began traveling to the LCO reservation for drug sales in late 1998 or early 1999. From January 1999, the alleged start of the conspiracy, to August 1999, Lasieur and Estrada made two drug trips each week between the reservation and Milwaukee, bringing with them

2

on each occasion crack cocaine weighing between 1-2 ounces to 3-4 ounces. For the remainder of 1999, Lasieur, another Latin King member, Gregario Acosta, Jr., and, on some occasions, Estrada, made about two drug trips a week, bringing about 3-4 ounces of both powder and crack cocaine on each trip.

Defendant was in jail in 1999, except from July to September. After he was released in early 2000, he began dating Jacquelyn Martinson, another member of the conspiracy, and resumed his frequent trips between the reservation and Milwaukee to sell powder and crack cocaine on the reservation, with Martinson's help. The two made approximately two trips a month for the period from about August 2000 until about November 2000. On each trip, they transported at least 1/2 to one ounce of crack cocaine and the same amount of powder cocaine. Throughout this time, Castillo remained in northern Wisconsin and sold crack cocaine. Estrada referred Timothy Stevens to defendant and Stevens began buying from Martinson and defendant, as well as from coconspirators John Radermacher and Gregorio Acosta, Jr.

From January 2000 until he was imprisoned in early 2001, Acosta, Jr. made trips to and from Milwaukee for drugs; from January 2001 until December 2001, Martinson and defendant made about three drug runs a month to and from Milwaukee, transporting a total of one ounce of powder and crack cocaine to the reservation on each trip. In August 2001, defendant and several coconspirators made crack cocaine sales from Spring Lasieur's 4

3

residence at LCO.

Defendant was arrested in December 2001 in possession of three firearms.  After he went to jail, he directed Martinson's drug dealing, giving her the telephone number of a source of drugs for resale at LCO.  She bought from the source until May 2002, when she and another coconspirator starting buying from Castillo, who served as a source for his coconspirators from the summer of 2002 through fall of the same year.  From December 2001 until approximately May 2002, Martinson traveled to Milwaukee 1-2 times a week and brought back an average of 4 ounces of powder and crack cocaine on each trip.

At sentencing, I found that defendant was responsible for at least 1.5 kilograms of crack cocaine, making his base offense level 38.  (At the time, 1.5 kilograms was the highest level in the guidelines.)  I increased the base offense level by two levels because he possessed firearms during the conspiracy.  The court of appeals affirmed both findings.

Defendant filed his motion for post conviction relief on October 19, 2009.  The government responded to the motion on November 16, 2009.  On November 30, 2009, defendant filed an amendment to his motion in which he alleged that his attorney was ineffective in his case in one additional respect:  he failed to raise a challenge to the court's reliance on the drug amounts attributed to defendant in the presentence report under Apprendi v. New Jersey, 530 U.S. 466 (2000).  In a letter construed as a reply brief filed on December 7, 2009, defendant added a variety of new claims.  The government has not had

4

an opportunity to respond to any of defendant's untimely claims but no response is necessary because the claims have no merit.

OPINION

Post conviction motions are not intended to be an opportunity for a defendant to obtain a full review of his trial and sentencing. Obtaining relief under § 2255 requires a defendant to show "an error of law that is jurisdictional, constitutional or constitutes a 'fundamental defect that inherently results in a complete miscarriage of justice.'" Borre v. United States, 940 F.2d 215, 271 (7th Cir. 1991). Any defendant who files a § 2255 motion has the job of making the required showing before he can obtain a vacation of his conviction.

Some of defendant's statements in his submissions suggest that he does not understand either the restrictive nature of the motion or his evidentiary burden. He says, for example, that the court has access to trial transcripts and evidence and should look at all of them before making a decision on his motion. Reply Br., dkt. #6, at 2. He does not seem to understand that it is not the court's job to review the evidence. Rather, it is his job to show both that an error occurred and that it was either jurisdictional, constitutional or so fundamental as to result in a complete miscarriage of justice.

Taking defendant's allegations one at a time, I find, first, that he is not entitled to

5

resentencing under Kimbrough, as he alleges.  He never raised the issue on appeal, even after the decision issued, and he does not contend that his attorney was ineffective for failing to anticipate it or at least, to bring it to the court of appeals' attention while defendant's appeal was pending.  Even if defendant had alleged ineffectiveness on the part of his appellate counsel, however, he would not be entitled to resentencing.  His attorney's failure to ask for resentencing would not constitute a constitutional or jurisdictional defect or fundamental error resulting in a miscarriage of justice that would support vacation of defendant's sentence and a new sentencing hearing.  This means that defendant's only remedy is to ask the court for a two-level reduction in his offense level under 18 U.S.C. § 3582(c)(2).

Defendant's next claim rests on his contentions of ineffectiveness on the part of his trial counsel.  Under Strickland v. Washington, 466 U.S. 668 (1984), proving that a lawyer was ineffective requires a defendant to show that the lawyer's work fell below the lowest level of competence, when considered as a whole.  Id. at 690; see also Peoples v. United States, 403 F.3d 844, 848 (7th Cir. 2005) ("it is the overall deficient performance, rather than a specific failing, that constitutes" ineffectiveness).  Even if a defendant can establish ineffectiveness, he still must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

6

Defendant argues that his attorney was ineffective for not challenging the drug amounts attributed to him, but he has not identified any inaccuracies in those amounts. He refers to the debriefing of Zoran Adjar in the Eastern District of Wisconsin, but does not say what information that debriefing produced, why it might be helpful to him or how his attorney could or should have learned about the information before defendant's trial. When a defendant argues that his counsel failed to investigate the case, he must provide "the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." Hardamon v. United States, 319 F.3d 943, 951 (7th Cir. 2003) (internal quotations and citation omitted). Because defendant has not done this, his claim of ineffectiveness in this respect will be denied.

Defendant asserts that his attorney was ineffective in another respect, because he did not subpoena evidence to show that Timothy Stevens was not a credible witness. Had he done so, defendant says, counsel would have learned that Stevens had no basis for his testimony that he bought controlled substances from defendant in the living room of Jacquelyn Martinson's apartment while Gregorio Acosta, Jr. was present. According to defendant, Acosta, Jr. had been in prison five months when the sale supposedly took place and defendant had ended his relationship with Martinson before this time. It appears that defendant is correct when he says that Stevens testified inaccurately about Acosta, Jr.'s being present during the 2001 drug sales. But the jury had already heard from Spring Lasieur that

7

Acosta, Jr. was in jail for almost two years, beginning in January 2001. Stevens was wrong about this point, but defendant has not cited any evidence that would show that Stevens testified falsely about buying drugs from defendant. Martinson's testimony at trial was that even though their relationship had ended, defendant stayed with her in New Post from time to time when he was at LCO to sell drugs. Trial Tr., dkt. #262, at 3-B-58-59.

Defendant's counsel may have erred in not challenging Stevens about Acosta, Jr.'s presence during the drug sale, but one oversight does not constitute ineffective assistance of counsel. The record shows that counsel undertook a vigorous and otherwise effective cross-examination of Stevens. Trial Tr., dkt. #259, at 2-A-104-2-A-123.

Defendant contends that his counsel was ineffective for not attacking the statements in his presentence investigation report that he had been cooking powder cocaine into crack in a house in northern Wisconsin. Again, he does not say what evidence he has to show that the information in the presentence report was not correct. He cannot criticize his trial counsel for not challenging information unless he has evidence to show that the information is wrong, but the point is a moot one. I did not consider this evidence when calculating drug quantities. Not only was it unnecessary to do so, given the amount of other evidence of drug amounts, but there was no evidence of how much powder defendant had cooked or how much he had produced.

I turn next to defendant's amended motion for § 2255 relief, dkt. #4, in which he or

8

someone acting on his behalf is contending that he was denied due process when his drug quantity was determined for sentencing purposes by the court and not by the jury. This claim is without any merit. It has been clear since <u>United States v. Booker</u>, 543 U.S. 220 (2005), that neither the holding in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), cited by defendant, nor the similar holding in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), applies to cases in which the sentencing guidelines are advisory, which they have been since <u>Booker</u> was decided. <u>United States v. Clanton</u>, 538 F.3d 652, 654-55 (7th Cir. 2008).

This leaves only defendant's brief in reply in which he says that he intends to submit copies of the debriefing of Zoran Adjar, which will show that Spring Lasieur's drug dealing began before 1999, when defendant was incarcerated, that she was Adjar's girlfriend and that Florentino Castillo and Luis Aries kept drugs on Lasieur's property. Defendant thinks that, in conjunction with the fact that defendant was out of prison only from July to September 1999 and re-incarcerated until December 24, 1999, this evidence would be relevant to showing that it was not foreseeable to him that Lasieur would make drug trips with Ernesto Estrada or meet Gregorio Acosta, Jr., and therefore, that he should not be held responsible for the entire conspiracy.

Defendant never raised this new argument at trial or at sentencing, and for good reason: the evidence did not support it. It is true that defendant was in custody from time to time during the life of the conspiracy, but it is also true that he played a role in the

9

conspiracy even when he was incarcerated.  For example, during his 2001 incarceration, he directed Jacquelyn Martinson's sales, making sure that she had a source for cocaine.

Defendant made no showing at trial that he had voluntarily withdrawn from the conspiracy at any time.  He produced no evidence to show that before he was arrested, he never took an affirmative act inconsistent with the object of the conspiracy, such as giving timely warning to law enforcement agencies or making a proper effort to prevent the commission of the crime.  United States v. Hargrove, 508 F.3d 445, 449 (7th Cir. 2007) ("Inactivity alone does not constitute withdrawal; to withdraw from a conspiracy, the defendant must 'terminate completely his active involvement in the conspiracy, as well as take affirmative steps to defeat or disavow the conspiracy's purpose.'") (quoting United States v. Wilson, 134 F.3d 855, 863 (7th Cir.1998); United States v. Williams, 81 F.3d 1434, 1442 (7th Cir.1996)).  In the absence of any such evidence, he has no good ground for his contention that he should not be held responsible for all of the reasonably foreseeable criminal acts of the conspiracy.

Even if I were to consider defendant responsible only for his and Martinson's drug distribution and not take into account any amounts that the other conspirators distributed while defendant was in prison in 1999, the drug quantity attributable to defendant is vastly greater than the 1.5 kilograms that determined his base offense level at sentencing, as the court of appeals found on defendant's direct appeal.  United States v. Acosta, 534 F.3d 574,

10

589 (7th Cir. 2008).  One and one-half kilograms is the equivalent of about 53 ounces; defendant's and Martinson's own dealings amounted to considerably more than that.

In summary, defendant has failed to show that he has any ground for vacation of his sentence.  Because I am denying petitioner's § 2255 motion, it is necessary to address the the issuance of a certificate of appealability under the newly effective amendments to Rule 11 of the Rules Governing Section 2255 Cases in the United States District Courts.

A certificate of appealability shall issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  In order to make this showing, a defendant must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893, n.4 (1983)).

Although Rule 11 allows the court to direct the parties to submit arguments on the question of issuing a certificate of appealability, it is unnecessary to do so in this instance. No reasonable jurist would believe that defendant's motion has any merit.  Defendant's assertions that his attorney was ineffective in various ways and that he is entitled to resentencing under Kimbrough v. United States, 552 U.S. 85 (2007), are not ones that judges would consider debatable.

11

ORDER

IT IS ORDERED that defendant Jorge Barragan's motion for post conviction relief

under 28 U.S.C. § 2255 is DENIED.

Entered this 16th day of December, 2009.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

12